COMER *v.* COMER.

1. Applied to a negro man who, at the passage of the act of March 9th, 1866, touching the relation of husband and wife between persons of color, had two reputed wives, both of whom he had espoused under the forms of marriage during the existence of slavery, the act contemplated that he should not continue to cohabit with both of them on any condition, that he might continue to cohabit with one of them by selecting her and making her his lawful wife in the mode prescribed, which was by having the usual marriage ceremony known to the law performed between her and himself, and that after this was done the general laws of the State, civil and criminal, should apply to them as to other persons duly united in wedlock. According to the intent as well as the letter of the act, it required both the selection and the ceremony to take place immediately, but postponing compliance only made cohabitation penal; it did not disable the parties from complying, or inhibit compliance, at any time however late. Acts 1865-6, p. 240; Code, §1667.

2. The selection of one of the reputed wives and subsequent cohabitation with her, whether exclusive or attended by cohabitation with the other also, was no compliance with the act without performance of the marriage ceremony. Unless that was performed, the selection counted for nothing, and was no obstacle to afterwards selecting the other and making her the lawful wife by going through the marriage ceremony with her, she consenting to it.

3. After the husband's death, the reputed wife whose marriage was celebrated by means of the marriage ceremony was his widow, and as such is entitled to administer upon his estate. The other reputed wife has no claim upon the estate whatever, even if he continued to cohabit with both until he died.

March 3, 1893.

Before Judge MILLER. Bibb superior court. November term, 1891.

LANIER, ANDERSON & ANDERSON and M. W. HARRIS, for plaintiff in error.

HARDEMAN, DAVIS & TURNER, *contra*

BLECKLEY, Chief Justice.

1. " Persons of color now living together as husband and wife, are hereby declared to sustain that legal relation to each other, unless a man shall have two or more reputed wives, or a woman two or more reputed husbands. In such event, the man, immediately after the passage of this act by the General Assembly, shall select one of his reputed wives, with her consent, or the woman one of her reputed husbands, with his consent, and the ceremony of marriage between these two shall be performed. If such man thus living with more than one woman, or such woman living with more than one man, shall fail or refuse to comply with the provisions of this section, he or she shall be prosecuted for the offence of fornication, or fornication or adultery, or fornication and adultery, and punished accordingly." Code, §1667 ; Acts 1865–6, p. 240.

This is the act of March 9th, 1866. At that date the negro man Comer had two reputed wives, the one Eliza, the other Ann, each of whom he had espoused under the forms of marriage used by colored persons during the existence of slavery. The evidence indicates that he continued to cohabit with both of them at separate places and in separate establishments up to the time of his death, which occurred in the year 1888. It also indicates that he selected Ann as his wife as early as December, 1866, but it is clear that no marriage ceremony was ever performed or celebrated to give sanction or effect to that selection, though he held her out and treated her as his wife. In all probability, the facts were such as would have constituted a good common law marriage with Ann, if he and she had been legally com-

petent to contract such a marriage with each other. So far as appears he made no selection of Eliza as a wife until April, 1867, but in that month he was regularly married to her under a marriage license, the ceremony being performed by a minister of the gospel.

Touching a man having two reputed wives at the date of the act of 1866, the scheme of that act evidently was to require him unconditionally to desist from cohabiting with both, and to interdict cohabitation with either unless he selected one and had the marriage ceremony performed between her and himself. The ceremony contemplated was the usual one known to the law, and not a mere agreement, formal or informal, between the parties to be man and wife. The selection was to be evidenced and made known by the ceremony, and no other means of declaring and publishing it would suffice. Because of his peculiar relation to both women, he was disabled from contracting a valid marriage with either of them save in the mode prescribed. Each being already a reputed wife, he could not make either of them a real wife by adding to that reputation. He must have a statutory marriage with one, or none at all with either. Strict compliance would require that the marriage should take place "immediately," but postponement, though it would render cohabitation in the meantime penal, would not work any legal disability to comply at any time, however late. It would be a misconstruction of the act to hold that if the marriage was not immediate, it might take place otherwise than in the mode prescribed, or, on the other hand, that it could not take place at all. Whenever selection was sealed by ceremony, then there would be a valid marriage, but not till then. Of course, no other selection would be essential than that implied and necessarily involved in going through the ceremony of marriage with one of the reputed wives. One would be taken, and the other

left; one would be selected, and the other rejected. After the ceremony, the special act of 1866 would cease to concern itself with the relation of the parties or their future conduct. The general laws of the State, civil and criminal, would then apply to them the same as to other persons duly united in wedlock.

2. Applying the construction of the act of 1866 which we have just announced, to the undisputed facts in evidence, it is manifest that the selection of Ann by Comer as his wife counted for nothing, that selection not having been attended nor followed by the performance of a marriage ceremony. And it is equally manifest that it constituted no obstacle to afterwards selecting Eliza and making her his lawful wife by duly celebrating a formal marriage between himself and her, with her consent, as was in fact done.

3. Upon the death of Comer, both women surviving, Eliza was his widow, and as such is entitled to administer upon his estate. Ann has no claim either upon the estate or upon the administration, although he may have continued to cohabit with her as long as he lived. The legal right is controlled by the marriage, not by the cohabitation.        *Judgment affirmed.*